# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GWENDOLYN NEAL,**

**Plaintiff,**

-vs-                                                     Case No.  6:05-cv-1556-Orl-DAB

**COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,**

**Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's denial of Plaintiff's application for Social Security disability benefits. For the reasons set forth herein, the administrative decision is **AFFIRMED.**

### PROCEDURAL HISTORY

Plaintiff applied for a period of disability, disability insurance benefits and Supplemental Security Income (SSI), alleging disability beginning on November 15, 2001, due to her asthmatic condition (R. 117). The application was initially denied (R. 74) and Plaintiff timely requested reconsideration. (R. 77). The reconsideration was not beneficial to Plaintiff (R. 80-81), and Plaintiff requested and received an administrative hearing (R. 83, 84, 36-68). On May 14, 2005, the Administrative Law Judge (the "ALJ") issued an unfavorable decision (R. 15-30). The Appeals Council denied Plaintiff's request for review, thus making the hearing decision the final decision of the Commissioner (R. 9-11). This action followed.

### NATURE OF CLAIMED DISABILITY

Plaintiff alleged disability due to asthma (R. 117) and residuals from her HIV positive status, such as diarrhea and vomiting (R. 44-5).

*Summary of Evidence Before the ALJ*

Plaintiff was 34 years old at the time of the decision (R. 15, 110), with a ninth grade education (R. 123), and previous relevant work experience as a fast-food restaurant cashier/manager, factory production worker, mail sorter, and room attendant for the handicapped (R. 130). Although Plaintiff claims a disability onset date of November 15, 2001, she worked at a McDonald's restaurant from December 2002 until March 2003 (R. 42). She testified that she worked there six days per week, 11 hours per day, cashiering, packaging food, and managing the floor. *Id.* She testified that she was preparing to go into manager training but quit because she was attacked by a customer (R. 42). The ALJ found that Plaintiff engaged in substantial gainful activity from December 2002 to March 2003 (R. 20). This particular finding is not challenged by Plaintiff.

The medical evidence before the ALJ is voluminous, and is set forth in the ALJ's decision. By way of summary, Plaintiff stands at 5'11" and, by the latest measurement before the ALJ hearing, weighed 364 pounds (R. 23, 425). The medical records indicate that Plaintiff was seen on July 24, 2001, at Memorial Hospital due to shortness of breath and cough (R. 184). X-rays of the chest did not reveal acute disease. The diagnosis was asthmatic bronchitis and exogenous obesity (R. 180-87). A pulmonary function test was positive for mild obstructive disease and moderate loss in diffusion capacity (R. 438).

On March 5, 2002, Plaintiff was admitted to Central Florida Regional Hospital in status asthmaticus (R. 189). She presented with shortness of breath and cough and was 16 weeks pregnant. She denied any nausea, vomiting or diarrhea, and reported that she smoked a half pack of cigarettes

-2-

a day. *Id.* She improved on medications, and on March 7, 2002, she left the hospital against medical advice (R.188-90).

On July 16, 2002, Plaintiff was admitted to Halifax Medical Center - Emergency Department complaining of shortness of breath and a flare-up of asthma (R. 237). Plaintiff was treated successfully and underwent fetal monitoring. Plaintiff admitted to smoking, and denied vomiting or diarrhea. *Id.*

On August 6, 2002, Plaintiff was seen at Halifax Medical Center, complaining of respiratory distress (R. 200, 208). Chest x-rays revealed a slight prominence of interstitial markings in each lung similar to the films taken in July, which "may be related to fibrosis" (R. 204). No infiltrates or pulmonary vascular congestion was seen. *Id.* Diagnosis included asthma exacerbation due to URI[1] and tobacco (R. 208). Plaintiff complained of diarrhea, which was felt to be the result of the prescribed antibiotics (R. 207).

On August 27, 2002, Plaintiff was admitted to Halifax Medical Center for the birth of her fourth child, via a cesarean section (R. 211). It was noted on admission that she was "breathing fine," but "continues to smoke." There were no abnormal lab findings pertinent to her stay, and it was noted that her HIV was "doing well" with a low viral load. (R. 212). Plaintiff left the hospital against medical advice on August 30, 2002.

On November 3, 2002, Plaintiff presented to Halifax Medical Center Emergency Department complaining of asthmatic condition and accompanying wheezing (R. 229). X-ray revealed a right lower lobe infiltrate (R. 230). During the visit, the treating doctor noted that there was no diarrhea or dysuria, and Plaintiff was noted to be "asymptomatic HIV status." (R.229). Plaintiff had no

---

[1]Common abbreviation for upper respiratory infection.

arthritis, joint pain or swelling. *Id.* Plaintiff was diagnosed with asthma exacerbation with hypoxemia and right lower lobe infiltrate, suspect pneumonia (R. 230). Plaintiff stated that she had quit smoking in August of 2002 (R. 229).

Plaintiff was seen on November 6, 2002, at Halifax Medical Center, with an admitting diagnosis of pneumonia, HIV, anemia and obesity (R. 242-43). Her HIV was noted to be asymptomatic. Over a four day course, Plaintiff was treated with steroids, oxygen and medicine and discharged in "stable and satisfactory condition" with instructions for follow-up in a week (R. 242-43, 256-7).

On March 5, 2003, Plaintiff underwent a spirometry report which revealed a FEV1 value premed at 1.57 and a post-med value at 1.99 (R. 261).

On March 23, 2003, Plaintiff was seen at Halifax Medical Center due to asthma exacerbation, human bite wound, broken finger nail and leg contusion (R. 265). She was noted to be morbidly obese and weighed 315 pounds. She had a contusion to the left mid tibia/fibula region without swelling or deformity. The assessment included asthma exacerbation, human bite wound, leg contusion and broken fingernail. It was noted that Plaintiff smokes (R. 265-6).

On May 28, 2003, Plaintiff was admitted to Florida Hospital of Deland complaining of shortness of breath and an asthma attack (R. 280). Plaintiff was treated for asthma exacerbation and released. On June 2, 2003, Plaintiff went to the Emergency Room complaining of dyspnea and bilateral lower rib pain (R. 289). Plaintiff was diagnosed with asthma exacerbation, was treated and released (R. 290).

On June 7, 2003, Plaintiff presented to the Volusia County Health Department for follow-up of her asthma and HIV (R. 372). She appeared in no respiratory distress, although she had scattered

wheezes on examination.  She was noted to be morbidly obese, without edema in extremities, and with no neurological deficits.  Medications were prescribed and lab tests ordered.

On July 23, 2003, Plaintiff was examined by Malcolm Graham, Ph.D., for a disability evaluation (R. 298-301). Plaintiff reported that she drank on a daily basis (5-6 cups of brandy), and had been drinking for years.  She admitted that she had no driver's license, due to unpaid speeding tickets, but she drove herself to the appointment.  She reported lying around all day in bed watching TV as her daily activity, while her older daughter took care of the baby.  There was no indication of anxiety or depression.  Plaintiff could relate information in a rational, coherent, and sequential fashion, and had some degree of concentration (R. 298-301). Plaintiff showed no indications of having hallucinations or perceptual disturbances, and was diagnosed with polysubstance dependence with a present dependence on alcohol (Axis I); probably anti-social personality disorder (Axis II); asthma and HIV-positive by report (Axis III); vocational and legal problems (Axis IV); and a GAF of 50-60 (Axis V). (R. 300).

Plaintiff was seen at Florida Hospital on September 9, 2003 (R. 316).  She presented with chest pain, cough, nausea and diarrhea. Chest x-rays revealed possible borderline cardiomegaly (R. 322).   No focal infiltrate, effusion, or vascular congestion were seen.  Plaintiff was treated and released, with a diagnosis of asthmatic bronchitis.

Plaintiff was seen again on November 19, 2003, due to shortness of breath and coughing (R. 326). Chest x-rays revealed internal development of bilateral infiltrates (R. 328).  Plaintiff left the hospital against medical advice (R. 333), and apparently went to the County Health Department and got a prescription for antibiotics (R. 357).

On November 23, 2003, Plaintiff presented to the Emergency Room, complaining of shortness of breath (R. 340, 359).  She admitted cigarette use, but denied alcohol use (R. 357).  She had

decreased breath sounds with wheezes, no edema in extremities and chest x-ray showed bilateral infiltrates (R. 357). She was assessed with pneumonia and admitted (R. 358). That same day, she was evaluated by another physician and denied smoking, but admitted to occasional drinking (R. 355). She denied vomiting or diarrhea. *Id.*

While in the hospital, Plaintiff was evaluated by an infectious disease specialist (R. 344). It was noted that Plaintiff was non-compliant with her HIV medications because "they make her sick." *Id.* Again, Plaintiff denied diarrhea, and no edema was noted. She was diagnosed with bilateral pneumonia, HIV, and hypoxemia. A pulmonary consultation was recommended.

On November 14, 2003, Plaintiff consulted with a pulmonologist while in the hospital (R. 340-343.) On examination, no edema or joint pain or swelling was noted. She was diagnosed with hypoxemia and bilateral interstitial pneumonia, possibly bacterial, and her medicine non-compliance was again noted. Broncholidator therapy was to be continued.

Plaintiff presented to the health department in December 2003 (R. 361-64). It was noted that Plaintiff had not been compliant in taking her medications.

Plaintiff saw a psychiatrist on December 9, 2003, upon referral from the health department (R. (R. 481). She was diagnosed with bipolar disorder, Type I, severe, with a history of polysubstance abuse and an impulse control disorder. Medications were prescribed.

On April 3, 2004, Plaintiff's records from the Volusia Health Department indicated that Plaintiff's viral load was greater than 100,000 (R. 381).

On July 6, 2004, Plaintiff presented again to Atlantic Psychiatric (R. 415). She complained of poor sleep and just "snapping."

On July 13, 2004, Plaintiff presented to Maged S. Samaan, M.D. (R. 414). On examination, she had slight wheezes bilaterally in her lungs, a rash on her left arm and "slight peripheral edema of

the lower limbs." She admitted to smoking and drinking socially; was assessed with asthma, obesity and HIV and referred to Dr. Hamod.  She was also strongly advised to quit smoking.

On August 4, 2004, Plaintiff was seen at Florida Hospital due to shortness of breath and asthma exacerbation (R. 392-93). She was treated and released.

Plaintiff was seen on August 9, 2004, at Central Florida Medical Associates due to complaints of shortness of breath and an asthma attack (R. 397-8).  Present medications were continued.

On September 7, 2004, Plaintiff was seen at Florida Hospital, while she was bringing her son in to be seen. She complained of bilateral feet swelling. During examination, Plaintiff denied any vomiting or diarrhea.  The impression was acute peripheral edema of uncertain etiology and anemia. (R. 401-2).

Maged S. Samaan, M.D., evaluated Plaintiff on September 22, 2004, for follow up of her blood pressure and foot swelling (R. 413).  She also complained of headaches with diarrhea and nausea.  She had pitting edema and her blood pressure was 148/96.  She was advised to diet and exercise, and her prescriptions were refilled.

Plaintiff saw Dr. Ahmed on September 22, 2004, and on December 7, 2004. Her blood pressure had decreased, and it was noted that her HIV and blood pressure were stable on her current medications (R. 423-36).

Plaintiff appeared at hearing and testified as to her pain and limitations.  A vocational expert also testified.

The ALJ found Plaintiff's impairments of asthma, HIV and alcohol dependence to be severe, but not severe enough to meet or medically equal one of the impairments listing in Appendix 1, Subpart P, Regulations No. 4. (R. 24).  The ALJ also found that Plaintiff's obesity, bi-polar disorder, and allegations of bi-lateral knee swelling were non-severe in nature (R. 23-24).  With respect to

Plaintiff's obesity, the ALJ stated that the Plaintiff "is able to move about generally well and sustain consistent function . . . has good muscle tone . . . and medical evidence fails to indicate the [Plaintiff's] ability to manipulate has been negatively impacted by the presence of adipose (fatty) tissue." (R. 23).  Concluding that the obesity was a non-severe impairment, the ALJ stated "that the [Plaintiff's] obesity has no more than a minimal affect upon her ability to perform work activity." *Id.*

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, as she could lift twenty pounds occasionally and ten pounds frequently, could stand for 3 hours in an 8-hour day, walk for 3 hours in a 8-hour day in addition to standing, sit for 6 hours in a 8-hour day with the following additional limitations: the need for a sit-stand option at will; to push and pull occasionally with her lower extremities; to climb occasionally; never to climb ladders, scaffolds, and ropes; to stoop, kneel, crouch, and crawl occasionally; to avoid concentrated exposure to temperature extremes, humidity, fumes, and hazards; and to perform simple, 1-2 step tasks (R. 26). In making this determination, the ALJ found that Plaintiff's assertions regarding her limitations and other medical complications were not credible (R. 26).  Based upon the Plaintiff's RFC, the ALJ determined that she could not perform her past relevant work (R. 27).  Utilizing a vocational expert, the ALJ next concluded that Plaintiff could perform work existing in significant numbers in the national economy (R. 28).  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Social Security Act, at any time through the date of the decision (R. 29).

### STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  Substantial evidence is more than a scintilla, and it must do more than create a suspicion of the existence of the

fact to be established; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Walden v. Schweiker*, 672 F.2d 835, 838-839 (11th Cir. 1982).

The Court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Even if the Court finds that the evidence weighs against the decision, the Court must affirm if the decision is supported by substantial evidence. *See Harwell v. Heckler*, 735 F.2d 1292 (11th Cir. 1984); *Martin v. Sullivan*, 894 F.2d at 1520 (11th Cir. 1990). The Court may not reweigh the evidence or substitute its own judgment, even if the Court finds that the weight of the evidence is against the decision. *Martin*, 894 F.2d at 1529. While there is a presumption in favor of the findings of fact, no such presumption attaches to the ALJ's legal conclusions about the proper standards to be applied in evaluating claims. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988).

### ISSUES AND ANALYSIS

Plaintiff asserts that the decision is not supported by substantial evidence in that: 1) the ALJ did not properly evaluate Plaintiff's complaints of knee pain and swelling; 2) the ALJ did not address Plaintiff's obesity, in combination with other impairments; 3) the ALJ failed to consider Plaintiff's allegations of fatigue; 4) Plaintiff's subjective complaints of pain and limitations were not properly discredited; and 5) the ALJ erred in not ordering a consultative examination. The Court finds no merit in these contentions.

The ALJ found Plaintiff's bilateral knee pain to be "non-severe in nature," noting:

The claimant has suffered from episodic edema in her legs, but she has never undergone consistent medical treatment for knee pain such as the use of a brace, anti-inflammatory medications, or injections. In addition, the claimant has never been diagnosed with a knee disorder. (R. 24).

Plaintiff contends that this statement "is not true as Plaintiff was diagnosed with peripheral edema which is a knee disorder." (Plaintiff's brief at 6, citing R. 401-2 and 413). That is not entirely correct. According to the U.S. National Library of Medicine and the National Institutes of Health, "abnormal buildup of fluid in the ankles, feet and legs is called peripheral edema." http://www.nlm.nih.gov/medlineplus/ency/article/003104.htm. Indeed, Plaintiff's evidence of a knee disorder indicates that she was seen for bilateral *feet* swelling (R. 401-02) and pitting edema of the *legs* (R. 413). There is no mention of any treatment or diagnosis of any swelling or limitations particular to her knees. Notably, the medical records cited indicate that the swelling of Plaintiff's feet was deemed to be of "uncertain etiology" and she was treated successfully with medication.[2] Indeed, no restrictions on the use of Plaintiff's knees were noted by any physician and the ALJ's finding that Plaintiff has never undergone consistent medical treatment for knee pain such as the use of a brace, anti-inflammatory medications, or injections, is supported by substantial evidence.

As for Plaintiff's obesity, it is true that the ALJ is required to consider impairments in combination. In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is

---

[2]Plaintiff testified at her hearing that when her legs swell up, "they give me water pills to take the water off." (R. 51). At the February 2005 hearing, Plaintiff noted that the last time she had to take the water pills was in September 2004. *Id.*

disabled.  985 F.2d at 534.  The Court finds that the ALJ's opinion, which is quite thorough and detailed, did, in fact, evaluate obesity in consideration with other impairments.

The ALJ made detailed findings regarding why Plaintiff's obesity was non-severe in nature (R. 23).  Moreover, although Plaintiff contends that the ALJ "failed to recognize how Plaintiff's obesity . . . *could* affect Plaintiff's other impairments, including her knee pain, asthma and fatigue" (emphasis added), such is not the standard applicable to the ALJ or this Court on review.  The ALJ is charged with determining facts, not possibilities.  Plaintiff points to no record evidence that her obesity *did* impact her other impairments.  Indeed, Plaintiff was able to work at a fast food restaurant six days a week, eleven hours a day, for several months after her alleged onset.  Further, the ALJ thoroughly considered Plaintiff's impairments of knee pain, asthma and fatigue (R. 23-27), and made a specific finding that despite Plaintiff's obesity, she was able "to move about generally well and sustain consistent function." (R. 23).  This objection is without merit.

As for Plaintiff's allegations of fatigue, Plaintiff contends that the ALJ "never addressed this impairment and how it would affect Plaintiff's ability to work, when considered with her other impairments."  The record shows otherwise.  The ALJ noted Plaintiff's fatigue (R. 24) and apparently evaluated it in terms of Plaintiff's alcohol dependence (R. 25 - noting that Plaintiff has a moderate restriction on her abilities to perform activities of daily living as demonstrated by her lying in bed for most of the day).  No error is shown.

Plaintiff next contends that the ALJ improperly discredited Plaintiff's subjective complaints.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly

articulated credibility finding with substantial supporting evidence in the record.  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ provided a detailed rationale for discrediting Plaintiff's allegations (R. 23, 26). Citing Plaintiff's "tendency to exaggerate," the ALJ  discredited Plaintiff's testimony based on the fact that despite allegations of constant diarrhea and vomiting, she only mentioned diarrhea and nausea on two occasions, never reported any limitations to doctors regarding sitting and standing and although she testified she stopped drinking in 2001, the record reveals she continued to drink heavily on a daily basis (R. 26).  The ALJ also noted Plaintiff's failure to comply with her HIV treatment regimen as detracting from her credibility and as a bar to benefits. *Id.*  These findings are supported by substantial evidence, as detailed above.  Plaintiff's contentions to the contrary are unpersuasive.

Plaintiff notes that most of the medical records are emergency room visits for asthma and not HIV, "which could explain why she did not mention the nausea and diarrhea as her main concern at that time was shortness of breath." There is no factual support for this supposition.  Even if the Court were willing to accept this as a factual assertion and not a mere possibility,[3] the fact remains that during most of her hospital visits, she specifically *denied* vomiting and diarrhea (*see* R. 189, 229, 237, 258, 355, 344, 401).  The Court similarly rejects Plaintiff's contention that the only mention of her drinking is during Dr. Graham's 2003 examination.  Plaintiff admitted to drinking "socially" in 2004 (R. 414), despite her testimony that she stopped drinking altogether in 2001 (R. 56).  The record also indicates numerous incidents where Plaintiff was non-compliant with her medications, disregarded medical directives (to quit smoking, for example) or simply refused treatment (leaving the hospital

---

[3]Again, the Court is not concerned with "could" be.  Plaintiff is charged with the burden of establishing that she *is* disabled; not that she *could* be.

-12-

against medical advice). While an individual has the right to make these decisions, such are not without consequence.[4] The ALJ's credibility determination is well supported by substantial record evidence.

Plaintiff's final argument is that the ALJ should have ordered a consultative examination. The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917. In fulfilling his or her duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). Plaintiff contends such was necessary here, as "no opinions have been given by any physician regarding Plaintiff's asthma, fatigue, obesity and knee problems." (Plaintiff's brief at 8). The Court disagrees.

The medical record is nothing less than voluminous and includes not only hospital records (which themselves include many complete physical examinations), but treatment notes from the health department, non-examining state agency evaluations, and a consultative mental evaluation. The record (approximately 400 pages worth) is replete with objective test results, including blood work and pulmonary functioning studies, and opinions regarding assessment of Plaintiff's various maladies, as well as treatment plans (often unheeded by Plaintiff). Moreover, Plaintiff was represented by counsel at the hearing, and no objection was made that the exhibits were insufficient or that a

---

[4]The Court notes that the ALJ did not make a finding that Plaintiff's failure to quit smoking was itself a bar to benefits, and the Court does not suggest that here. Rather, the Court cites to Plaintiff's aggravation of her asthma condition by continuing to smoke, in the context of the credibility determination. The ALJ noted that Plaintiff "admitted that she continues to smoke ½ pack of cigarettes per day despite having asthma." (R. 23). When asked about her smoking at hearing, Plaintiff did not assert that she was unable to quit, but indicated that she was unwilling to, stating: "I gotta do something. Know I ain't gon' be here too much longer." (R. 54).

consultative examination was needed.  The ALJ was certainly well enough informed without the addition of yet another physician's examination and opinion.

A final word is in order.  As the above summary of the medical evidence indicates, there is no doubt that Plaintiff suffers from several impairments and has very real medical challenges.  The issue before this Court, however, is not whether Plaintiff should be working, but whether the decision of the ALJ that she is not entitled to disability benefits was made in accordance with proper standards of law and is supported by substantial evidence.  The Court has carefully reviewed the record, the detailed decision of the ALJ, and the arguments presented by Plaintiff.  The applicable law compels a conclusion that the Commissioner's decision must be affirmed.

### CONCLUSION

The ALJ's decision was made in accordance with the proper legal standards and is supported by substantial evidence.  It is therefore **AFFIRMED.**  The Clerk is directed to enter judgment accordingly and close this case.

**DONE** and **ORDERED** in Orlando, Florida on January 16, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record